IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-084-CV





CHARLES BEN HOWELL,



 APPELLANT


vs.





OSCAR MAUZY AND ANNE MAUZY,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT



NO. 406,958, HONORABLE PETE LOWRY, JUDGE PRESIDING



 





 Charles Ben Howell appeals from a summary judgment that he take nothing on his
claims against Oscar Mauzy and Anne Mauzy for their alleged failure to report certain campaign
contributions and expenditures in accordance with Title 15 of the Texas Election Code. Act of
May 13, 1985, 69th Leg., R.S., ch. 211, § 8, 1985 Tex. Gen. Laws 1061 (Tex. Elec. Code Ann.
§§ 251.001-.019, since amended) ("Election Code"). (1) Howell also appeals from a declaratory
judgment the trial court rendered in the Mauzys' favor on their counterclaim. We will reverse
the declaratory judgment and render judgment consistent with our opinion. We will affirm the
remainder of the judgment.



THE CONTROVERSY


 After contested primary elections, Charles Ben Howell and Oscar Mauzy became
the Republican and Democratic party nominees, respectively, in the 1986 election for Place One
on the Supreme Court of Texas. Howell filed the present lawsuit shortly before the general
election in 1986. He sought damages and injunctive relief against both of the Mauzys (2) for alleged
violations of campaign contribution and expenditure reporting requirements in section 251.011
of the Election Code. (3) Under section 251.011(k) of the Code, a candidate is liable in civil
damages to each opposing candidate for unreported expenditures or contributions in the election
in which they should have been reported. Mauzy counterclaimed for a declaratory judgment that
his filings had in fact complied with the applicable Election Code provisions. See Uniform
Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1986 &
Supp. 1994).

 Both Howell and Mauzy moved for summary judgment. The trial court rendered
summary judgment that Howell take nothing by his claims, and rendered declaratory judgment
in favor of Mauzy. (4) This appeal ensued.



 VENUE 


 In his first and second points of error, Howell asserts the trial court erred in
overruling his motion to transfer venue to Dallas County. Howell initially filed suit in Dallas
County district court on October 17, 1986. He was unsuccessful in obtaining service of citation,
and, believing the Mauzys had moved to Austin, filed suit in Travis County district court on
October 22, 1986. The Mauzys eventually appeared in the Travis County suit, and filed their
counterclaim for declaratory relief. At that time, Howell unsuccessfully moved to transfer venue
of the Travis County suit to Dallas County. (5)

 Howell argues that civil suits brought under Title 15 are subject to the venue
provision found in former section 251.019 of the Election Code providing:



 Venue for any offense resulting from a violation of this chapter shall lie
exclusively in the county of the residence of the accused, except when the accused
is a nonresident of Texas, in which case venue shall lie in Travis County. (6)



Howell contends that this provision is jurisdictional and mandatory, and asserts that the Mauzys
deceived him regarding the location of their residence, which Howell now claims was in Dallas
at the time he filed suit in October 1986.

 The Mauzys contend that section 251.019 pertains solely to criminal actions under
the Election Code, and argue that the general permissive venue statute applies. See Tex. Civ.
Prac. & Rem. Code Ann. § 15.001 (West 1986). Section 15.001 provides that a lawsuit shall be
brought in the county in which all or part of the cause of action accrued or in the county of
defendant's residence. The Mauzys argue that the cause of action accrued in Travis County, and
further, that Howell waived his right to complain about venue by filing suit in Austin. (7)

 We need not decide if section 251.019 of the Election Code applies to civil suits,
because we find in the record some evidence that the Mauzys had a residence in Travis County
when Howell filed this lawsuit. Therefore, venue was proper in Travis County under either the
permissive venue statute or section 251.019 of the Election Code.

 In reviewing the trial court's ruling on a motion to transfer venue, we must
consider the entire record. Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (West 1986); Ruiz
v. Conoco, Inc., 868 S.W.2d 752, 758 (Tex. 1993). We need not review the evidence for factual
sufficiency. Ruiz, 868 S.W.2d at 758. Rather, we must defer to the trial court if there is
probative evidence to support the trial court's decision, even if the preponderance of the evidence
is to the contrary. Id. Thus, "if there is any probative evidence in the entire record

. . . that venue was proper in the county where judgment was rendered, the appellate court must
uphold the trial court's determination." Id. We may reverse the judgment and remand the cause
only if there is no evidence that venue was proper in the county of suit. Id.

 At a hearing on Howell's motion to transfer venue and plea in abatement, Anne
Mauzy testified (8) she and Oscar Mauzy had placed their Dallas home on the market in January
1986. They had moved the contents of their Dallas home to Austin in early August 1986. She
stated that by October 17, 1986, the date Howell filed the Dallas lawsuit, she had moved to
Austin. At that time, the Mauzys had not yet sold their Dallas home. She stated that during this
time Oscar Mauzy was campaigning, and thus traveling, although he sometimes stayed at their
Austin home.

 Oscar Mauzy testified that he purchased the Austin home sometime in 1986, and
began to stay there. When he was in Dallas during the last months of 1986, he stayed at another
residence because their Dallas home was vacant and for sale.

 Howell introduced two returns of service of citation in which two deputy constables
stated they had attempted service on the Mauzys at their Dallas residence on October 17th and
20th, but that the house was vacant and for sale.

 Based on the above summary of the evidence, we conclude there is some evidence
that in October 1986, the Mauzys were in the process of moving their residence from Dallas
County to Travis County. If a defendant is in the process of moving from one county to another,
and his affairs are in such a state that it is uncertain in which county his residence is, he may be
sued in either county. Haney v. Haney, 307 S.W.2d 649, 653 (Tex. Civ. App.--Amarillo 1957,
no writ); Eppenauer v. Schrup, 121 S.W.2d 473, 477 (Tex. Civ. App.--Fort Worth 1938, no writ).

 For venue purposes, moreoever, a defendant may have a residence in two or more
counties. Davenport v. Harry Payne Motors, Inc., 247 S.W.2d 452, 453 (Tex. Civ. App.--Austin
1952, no writ); see Snyder v. Pitts, 241 S.W.2d 136, 139 (Tex. 1951). (9) The presence of a
defendant's wife living in a second place of abode is evidence of a second residence, although it
does not conclusively establish a second residence as a matter of law. Snyder, 241 S.W.2d at 140;
Cauble v. Grey, 604 S.W.2d 197, 199 (Tex. Civ. App.--Dallas 1979, no writ). Based on the
entire record, we conclude there is some evidence that both Mauzys maintained a residence in
Travis County at the time Howell filed suit. We overrule Howell's first and second points of
error.



PLEA IN ABATEMENT


 In points of error three through eight, Howell contends the trial court erred in
overruling his plea in abatement. As grounds for the plea, Howell asserted the pendency of the
Dallas lawsuit that he had filed five days before the Austin lawsuit. After a hearing on the plea,
the trial court overruled the plea in abatement on two grounds: (1) Howell was estopped to assert
the pendency of the Dallas lawsuit; and (2) Howell had abandoned the Dallas lawsuit. (10)

 Generally, if two lawsuits concerning the same controversy and parties are pending
in courts of coordinate jurisdiction, the court in which suit was first filed acquires dominant
jurisdiction. (11) Wyatt v. Shaw Plumbing Co., 760 S.W.2d 245, 248 (Tex. 1988); Curtis v. Gibbs,
511 S.W.2d 263, 267 (Tex. 1974); V.D. Anderson Co. v. Young, 101 S.W.2d 798, 800 (Tex.
1937). Abatement of a lawsuit due to the pendency of a previous lawsuit is based on the
principles of comity, convenience, and the necessity for an orderly procedure in the trial of
contested issues. Wyatt, 760 S.W.2d at 248. If a party calls the second court's attention to the
pendency of the first suit by a plea in abatement, that court must sustain the plea. Curtis, 511
S.W.2d at 267.

 However, the mere physical filing of the petition is insufficient to deprive a court
in which the same suit is subsequently filed of active jurisdiction. V.D. Anderson Co., 101
S.W.2d at 800-01. Matters accruing subsequent to the filing of the first suit may defeat the plea
in abatement. Reed v. Reed, 311 S.W.2d 628, 630 (Tex. 1958). In this connection, three
exceptions exist to the general rule requiring abatement of the second suit: (1) a party's conduct
may estop him from asserting dominant jurisdiction in another court; (2) the first court may lack
power to join parties to be joined if feasible; or (3) the party filing the first suit lacks the intent
to prosecute it. Wyatt, 760 S.W.2d at 248. If, as happened here, the second court determines that
one of the exceptions applies, it may assume dominant jurisdiction and proceed to judgment. (12) 
Hartley v. Coker, 843 S.W.2d 743, 747 (Tex. App.--Corpus Christi 1992, no writ).

 Howell does not dispute that in October 1986, soon after he filed both lawsuits, he
sought a writ of mandamus from the supreme court to compel the Travis County district court to
hold a hearing in the case, and in his petition for the writ he expressly represented that Travis
County had obtained exclusive jurisdiction of the cause of action. Moreover, we note that at a
hearing on October 27, 1986, counsel for Howell represented to the Travis County district court
that "jurisdiction of this matter is now in Austin." We conclude that the trial court did not err in
overruling the plea in abatement on the ground that Howell was estopped to assert the pendency
of the Dallas lawsuit as a basis for abatement of the Travis County suit.

 Moreover, a party must raise a plea in abatement in a timely manner or it is
waived. Wyatt, 760 S.W.2d at 248; see Cleveland v. Ward, 285 S.W. 1063, 1071-72 (Tex.
1926), overruled on other grounds, Walker v. Packer, 827 S.W.2d 833, 842 (Tex. 1992). Courts
may examine the equities of the situation in deciding whether the plea is timely filed. Develo-Cepts, Inc. v. City of Galveston, 668 S.W.2d 790, 793 (Tex. App.--Houston [14th Dist.] 1984,
no writ); Bluebonnet Farms, Inc. v. Gilbraltar Sav. Ass'n, 618 S.W.2d 81, 84 (Tex. Civ.
App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.). Howell did not file the plea in abatement until
April 1987, some months after he sought to compel the Travis County District Court to take
action in the case, and after he filed an amended petition in December 1986. This is not a
situation in which Howell was unaware of the facts supporting a plea in abatement. See Develo-Cepts, Inc., 668 S.W.2d at 793 (holding plea in abatement not untimely after two-and-one-half
years during which parties conducted discovery which provided information necessary to urge
plea). Howell chose to pursue actively the Travis County litigation, while aware of the pendency
of the Dallas suit, before asserting a plea in abatement. We conclude Howell's plea in abatement
was untimely. We overrule Howell's points of error three through eight.



TRANSFER FROM DALLAS TO AUSTIN


 In his fifty-seventh point of error, Howell asserts that Judge Guy Jones (13) erred in
abating and transferring the Dallas County lawsuit to Travis County. In November 1988, Judge
Jones convened a hearing at New Boston, in Bowie County, on the Mauzys' plea in abatement and
motion to transfer venue in the Dallas suit. Judge Jones subsequently ordered the Dallas suit
abated and transferred to Travis County. The Travis County district court then ordered the two
cases consolidated. Howell contends Judge Jones violated article V, section 7 of the Texas
Constitution by conducting proceedings in Bowie County for a suit pending in Dallas County.

 Section 7 of article V deals with judicial districts and district judges and provides
in part: "The Court shall conduct its proceedings at the county seat of the county in which the
case is pending, except as otherwise provided by law." Tex. Const. art. V, § 7. The record
reflects that the case was never transferred to the district court in Bowie County, but at all times
was pending in the 134th district court of Dallas County. (14) The trial judge stated repeatedly that
he was acting as judge of the 134th District Court.

 A district-court judge has no power to adjudicate the rights of litigants except at
the time and places prescribed by law for holding court. Lyons-Thomas Hardware Co. v. Perry
Stove Mfg. Co., 27 S.W. 100, 109 (Tex. 1894); Ex parte Lowery, 518 S.W.2d 897, 900 (Tex.
Civ. App.--Beaumont 1975, orig. proceeding). The Texas constitution requires a district court to
conduct proceedings only at the county seat of the county in which the case is pending. (15) 
Bridgeman v. Moore, 183 S.W.2d 705, 708 (Tex. 1944); Turner v. Tucker, 258 S.W. 149, 150
(Tex. 1924); Isbill v. Stovall, 92 S.W.2d 1067, 1072 (Tex. Civ. App.--Eastland 1936, no writ);
cf. Whitner v. Belknap, 34 S.W. 594, 596 (Tex. 1896) (holding unconstitutional a statute
establishing Bowie County district court in Texarkana instead of in county seat in New Boston). (16) 
 A district court has no jurisdiction to conduct proceedings outside the county in which suit is
pending. Isbill, 92 S.W.2d at 1071. Thus, if the court renders judgment or issues an order while
sitting outside the county in which suit is pending, such judgment or order is void. Lowery, 518
S.W.2d at 902; Berner v. Berner, 146 S.W.2d 1017, 1018 (Tex. Civ. App.--Galveston 1941, writ
dism'd judgm't cor.); Isbill, 92 S.W.2d at 1072. Such a defect in jurisdiction may not be
remedied by the consent or agreement of the parties. Isbill, 92 S.W.2d at 1071. (17)

 There is an exception to the rule stated in section 7 of article 5: "except as
otherwise provided by law." Tex. Const. art. V, § 7. The legislature added this language by
constitutional amendment in 1949 in order "to permit the legislature to confer greater flexibility
in cases pending in districts embracing two or more counties." Tex. Const. art. V, § 7
interpretive commentary; see also Barnhart Indep. Sch. Dist. v. Mertzon Indep. Sch. Dist., 464
S.W.2d 197, 201 (Tex. Civ. App.--Austin 1971, writ ref'd n.r.e.). Subsequently, the legislature
enacted a statute pertaining to multicounty districts. See Tex. Gov't Code Ann. § 24.017 (West
1988). Section 24.017 permits the judge of a multicounty district court to hear and determine
certain matters and sign judgments and orders connected with those matters "in any county in his
judicial district." Tex. Gov't Code Ann. § 24.017(b)(1)-(3). (18) The statute also authorizes a
district judge assigned to a multicounty district to take the same actions "in the manner provided
by this section for the regular judge . . . ." Tex. Gov't Code Ann. § 24.017(d) (West 1988). 
Section 24.017 only applies within judicial districts composed of more than one county. See Tex.
Gov't Code Ann. § 24.017(a) (West 1988). (19) Thus, section 24.017 did not authorize Judge Jones
to conduct, in Bowie County, proceedings connected with a suit pending in Dallas County. (20)

 Because the trial court conducted the hearing on the motion to transfer venue and
plea in abatement outside the county in which suit was pending in violation of article V section
7 of the Texas constitution, its order abating the cause and transferring venue to Travis County
is void. We sustain Howell's fifty-seventh point of error.

 In light of our disposition of Howell's fifty-seventh point of error, we need not
address his points nine through fourteen complaining of error in the order to transfer venue of the
Dallas suit to Travis County; his points fifteen through eighteen concerning error in the
consolidation of the Travis County and Dallas suits; and points fifty-five and fifty-six concerning
error in the appointment of Judge Jones.



SUMMARY JUDGMENT ON ELECTION CODE VIOLATIONS


 In points of error nineteen through fifty, Howell asserts the trial court erred in
rendering summary judgment that he take nothing by his claims against the Mauzys for five
alleged campaign contribution or expenditure reporting violations under section 251.011 of the
Election Code. The trial court granted both Oscar Mauzy's and Anne Mauzy's motions for
summary judgment and subsequently rendered final judgment in October 1992. (21)

 The movant for summary judgment has the burden to show there are no genuine
issues of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ.
P. 166a(c); Wornick, Co. v. Casas, 856 S.W.2d 732, 733 (Tex. 1993); Nixon v. Mr. Property
Management Co., 690 S.W.2d 546, 548 (Tex. 1985). A defendant moving for summary judgment
must show as a matter of law that the plaintiff has no cause of action against him. Citizens First
Nat'l Bank v. Cinco Exploration Co., 540 S.W.2d 292, 292 (Tex. 1976). In reviewing a
summary judgment, we must accept as true all evidence favorable to the non-movant, and indulge
every reasonable inference and resolve all doubts in favor of the non-movant. Wornick, 856
S.W.2d at 733. The dispositive question on appeal is not whether the summary judgment record
raises fact issues, but whether the summary judgment proof establishes as a matter of law that
there is no genuine issue of material fact and that the movant is entitled to judgment as a matter
of law. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970).

 The Mauzys asserted in their motions multiple grounds for summary judgment, and
the trial court did not specify in its orders the grounds on which it granted the motions. (22) In such
a situation, we will affirm the judgment if it is supported by any ground the Mauzys expressly
asserted in their motions. Community Mut. Ins. Co. v. Owen, 804 S.W.2d 602, 604 (Tex.
App.--Houston [1st Dist.] 1991, writ denied).

 Oscar Mauzy asserted the following grounds, among others, in his amended motion
for summary judgment: (1) Howell is without standing to challenge contributions or expenditures
involved in the Democratic primary; (2) under section 251.011(k) of the Election Code, Howell
may only recover for "unreported" contributions and expenditures and all of the alleged violations
Howell identified were in fact reported; (3) all of Mauzy's filings were in compliance with the
applicable statutes and governing regulations of the Secretary of State; (23) (4) the Election Code
provides no remedy for Howell to recover for alleged conversion of campaign funds to personal
use. (24) Anne Mauzy's motion for summary judgment asserted that the previous interlocutory
summary judgments in favor of Oscar Mauzy disposed of all issues that Howell asserted against
her. (25)

 On appeal, Howell contends the trial court erred in rendering summary judgment
on five alleged campaign-contribution and expenditure-reporting violations. We will address his
complaints with regard to each of the five violations in connection with the applicable ground for
summary judgment.



Standing

 In points of error thirty-nine, forty, forty-five and forty-six, Howell asserts the trial
court erred in holding that he had no standing to assert a cause of action against the Mauzys for
alleged campaign-contribution and expenditure-reporting violations connected with the Democratic
primary election. The Democratic primary on May 3, 1986, led to a primary runoff election on
June 7, 1986. Three of the alleged violations occurred during the primary election: (1) A $3,000
transfer from one campaign fund to another campaign fund in December 1985; (2) a $225,000
personal loan from Republic Bank to Oscar Mauzy in December 1985; and (3) a $225,000 loan
from Allied Bank in April 1986.

 Howell's cause of action arose under the following provision of the Election Code:



 Any candidate or campaign treasurer or assistant campaign treasurer of a
political committee who fails to report in whole or in part any contribution or
expenditure as provided in the foregoing provisions of this Section shall be liable
for double the amount or value of such unreported contribution or expenditure or
unreported portion thereof, to each opposing candidate in the election in which
same should have been reported. Each of such opposing candidates shall also
recover reasonable attorneys' fees for collecting the above liquidated damages.



Election Code § 251.011(k) (emphasis added).

 The Mauzys contend that Howell was not Mauzy's opposing candidate during the
Democratic primary elections, and therefore, even assuming the loans or the transfer were
improperly reported, Howell has no standing to assert a cause of action for Mauzy's alleged
failure to report contributions or expenditures in the primary election. Howell argues that the
primaries were merely "elimination rounds" in the single election that also encompassed the
general election of November 1986. He contends that any expenditures or contributions connected
with the primaries were part of the process leading up to the general election in which he opposed
Mauzy, and because he and Mauzy were in the same election, Howell therefore has standing to
challenge reporting violations connected with the primaries. (26)

 The statute defines "election" as "any election held to nominate or elect a candidate
to public office." Election Code § 251.001(6) (emphasis added). By its plain language, the
statute rejects Howell's theory by providing that a primary election is an "election" under section
251.011(k), and not an "elimination round" in the general election. Thus, only those candidates
who opposed Mauzy in the primary election have standing to challenge his alleged reporting
violations in that election. (27) Because Howell did not become Mauzy's opposing candidate until
after the primary election, he has no standing under section 251.011(k) to challenge reporting
violations that occurred during that primary. (28) We overrule Howell's thirty-ninth and fortieth
points of error.

 In light of our holding that Howell has no standing to challenge the reporting of
contributions and expenditures in the primary election, we do not address his points of error
nineteen through twenty-one, twenty-five through twenty-seven, and forty-one, assigning error
to the trial court's summary judgment regarding the bank loans and the $3,000 transfer between
campaign funds.



Election Code Provides No Remedy

 In points of error thirty-one through thirty-three, Howell asserts the trial court
erred in rendering judgment in the Mauzys' favor on Howell's claim that Mauzy converted
campaign funds to personal use. Specifically, he asserts Mauzy spent $2,750 on personal moving
expenses from Dallas to Austin. Mauzy responds that, even assuming such allegations are true,
the Election Code provides no remedy for Howell.

 Section 251.007 states: "A person who accepts a contribution as a candidate or
office-holder shall not convert such contributions to personal use except as authorized by the State
Ethics Advisory Commission." Election Code § 251.007(a). Section 251.007 does not provide
an opposing candidate with a remedy, but instead states that "[a] person who converts a
contribution to his personal use in violation of this section is civilly liable to the State of Texas
for an amount equal to the amount of the converted contribution plus reasonable court costs." 
Election Code § 251.007(d). Thus, the trial court correctly rendered summary judgment on
Howell's claim for damages for Mauzy's alleged use of campaign funds for personal use. We
overrule Howell's points of error thirty-one through thirty-three. In light of this holding, we do
not address Howell's forty-third and forty-ninth points of error raising other complaints regarding
the trial court's rendition of summary judgment on Howell's conversion claim.



Compliance with Election Code Reporting Requirements

 In points of error twenty-two through twenty-four, Howell asserts the trial court
erred in granting summary judgment in favor of the Mauzys on his claim that they failed to report
a $9,083.75 interest payment on the $225,000 loan from Allied Bank addressed above. Oscar
Mauzy was personally liable on the loan, and from his personal funds paid the interest to Allied
Bank on September 26, 1986. Howell argues that because the proceeds of the loan were
undisputedly expended for campaign purposes, an interest payment on the loan qualifies as a
reportable "expenditure" under section 251.011(k). (29) The Mauzys rejoin that because Allied Bank
made the loan in the due course of business to Oscar Mauzy personally, it was not a reportable
contribution. (30) Therefore, they contend that an interest payment from Oscar Mauzy's personal
funds did not constitute a campaign expenditure, but was the discharge of Oscar Mauzy's personal
obligation.

 Under section 251.011(k), a candidate who fails to report an expenditure is liable
to each opposing candidate in the election in which it should have been reported for double the
amount of the unreported expenditure. An "expenditure" within the meaning of the statute is "any
payments made or obligations incurred by a candidate . . . when such payments or obligations are
involved in an election." Election Code §251.001(5)(A) (emphasis added). Thus, the issue is
whether the interest payment from Mauzy's personal funds on the Allied Bank loan was a payment
"involved in an election." The meaning of the phrase "involved in an election" has the same
meaning as in section 251.001(4). Election Code § 251.001(5).

 Section 251.001(4)(A) provides:



 "[A]n individual or group of persons is involved in an election upon the . . . 
making of an expenditure which was given or made and received with the intent
that it be used or held for some election, and that the . . . receipt of or making of
the contribution or expenditure may occur before, during or after an election . . .
."



 Howell contends that because the loan proceeds were expended for campaign
purposes, an interest payment on the loan from Mauzy's personal funds was a payment "involved
in an election." Such a contention overlooks the plain meaning of the statute which states that a
person is involved in an election upon making an expenditure with the intent that it be used or
held for some election. A payment to a bank from a candidate's personal funds that discharges
a personal obligation is not made "with the intent that it be used or held for some election," even
if the candidate expended the loan proceeds in an election campaign. We overrule Howell's points
of error twenty-two through twenty-four. Because we hold that the interest payment was not
"involved in an election" we do not address Howell's point of error forty-four.



Expenditures Not Unreported

 In points of error twenty-eight through thirty, Howell asserts the trial court erred
in rendering summary judgment on Howell's claim that Mauzy failed to comply with the statutory
reporting requirements in connection with credit-card expenditures.

 Section 251.011(c)(1)(B) of the Election Code requires campaign expenditure
reports to include the full name and address of the recipient, the date of the expenditure, the
amount, and the purpose. The summary-judgment record reveals that Mauzy reported several
campaign expenditures by reporting a date, a credit card company as a payee, an amount, and a
purpose, such as "travel expense."

 Regarding the "date of the expenditure," Election Code section 251.011(c)(6)
provides: "[A]n expenditure need not be considered to have been made until the amount is readily
determinable, or if the character of the expenditure is such that normal business practice is not to
disclose the amount until the next periodic bill is received, then the expenditure need not be
considered to have been made until the date of receipt of the bill." Section 4.04(3) of the
Secretary of State's 1986 Political Funds Reporting and Disclosure Directive provided that "a
charge on a credit card is readily determinable at the time it is incurred since the person charging
knows the amount of the obligation at the time the obligation is created." Howell contends the
dates Mauzy reported are "obviously" the dates he paid the charges, not the true transaction date. (31)

 Section 251.011(k) provides that a candidate "who fails to report in whole or in part
any . . . expenditure as provided in the foregoing provisions of this Section shall be liable for
double the amount or value of such unreported . . . expenditure or unreported portion thereof." 
(Emphasis added.) The Mauzys assert section 251.011(k) only imposes civil liability on a
candidate for "unreported" expenditures. They argue that Mauzy did report all of the
expenditures about which Howell complains, and that Howell is merely dissatisfied with the detail
of the reports. Howell asserts that if a candidate fails to comply in any detail with the statutory
reporting requirements as interpreted by the Secretary of State, the expenditure is "unreported"
within the meaning of section 251.011(k).

 Assuming Mauzy reported the date he paid the credit card bill as opposed to the
true transaction date, the issue is whether those expenditures were "unreported" within the
meaning of the statute.

 In construing a statute, we must ascertain and follow the legislature's intent. 
Citizens Bank v. First State Bank, Hearne, 580 S.W.2d 344 (Tex. 1979); Minton v. Frank, 545
S.W.2d 442, 445 (Tex. 1976). We determine legislative intent by looking at the language of the
statute. Jones v. Del Andersen & Assocs., 539 S.W.2d 348, 350 (Tex. 1976). Courts are
responsible for giving a true and fair interpretation of the enactment as written, and not an
interpretation that is exaggerated, forced, or strained, but one that the ordinary meaning of the
words will fairly sanction and clearly sustain. Commissioners Court v. Criminal Dist. Attorney,
Caldwell County, 690 S.W.2d 932, 936 (Tex. App.--Austin 1985, writ ref'd n.r.e.). A court
should strictly construe a statute imposing a penalty. Agey v. American Liberty Pipeline Co., 172
S.W.2d 972, 974 (Tex. 1943); State v. International & G.N. Ry., 179 S.W. 867, 868 (Tex.
1915). Such a statute should be construed against those seeking to impose the penalty and in favor
of those on whom such penalties would be imposed. Branaum v. Patrick, 643 S.W.2d 745, 749
(Tex. App.--San Antonio 1982, no writ).

 By its plain language, section 251.011(k) imposes civil liability on a candidate who
"fails to report" expenditures as provided in the preceding provisions of the section. The liability
is measured by the amount of the "unreported" portion. We conclude that a candidate who reports
the date he or she paid the credit card bill instead of the date of the transaction has not failed to
report the expenditure, and such an expenditure is not "unreported" under section 251.011(k).

 Howell also complains Mauzy reported the expenditure to the credit-card company,
and not to the true vendor, and that Mauzy did not meaningfully disclose the purpose of the
expenditure. Mauzy reported numerous expenditures in 1986 from June 7th through December
31st by listing the payee as a credit card company, and the purpose as, for example, "travel
expense." Howell rests his contention on a letter of interpretation the Secretary of State published
in the Texas Register in June 1988. 13 Tex. Reg. 2855 (1988). In this letter the Secretary of
State interpreted Title 15 to require candidates to disclose the true vendor and not the intermediate
credit-card company, to disclose the purpose in a meaningful way, and to indicate the type of
services or goods obtained or the reason the money was spent. Id. We note that this letter was
published close to two years after the election in November 1986, and after the trial court granted
Mauzy's amended motion for summary judgment in March 1988. (32)

 The letter of interpretation is a general statement of policy rather than a binding
rule. See 1 Frank E. Cooper, State Administrative Law, Ch. VII at 174-76 (1965). (33) Moreover,
the Secretary of State did not intend a retroactive application of the policy except on a voluntary
basis. This is indicated by the fact that the letter encourages rather than commands candidates to
amend previously filed reports to comply with the requirements in the letter, and the direction that
"[t]he rulings of this directive will be incorporated into the rules defining significant
noncompliance promulgated under the Texas Election Code § 251.034(e)." Therefore, we will
not apply the 1988 policy on a retroactive basis when the Secretary of State did not intend to do
so. Such an application would subject an unknown number of people to a new civil and criminal
liability. We overrule Howell's points of error twenty-eight through thirty. Because we hold that
the credit-card expenditures were not unreported, we do not address Howell's forty-second point
of error.

 Because we will affirm the summary judgment in the Mauzys' favor on Howell's
claims, we do not address Howell's fifty-first point of error asserting that the trial court erred in
overruling Howell's motion for summary judgment on his claims.



 DECLARATORY JUDGMENT


 In his fifty-fourth point of error, Howell asserts the trial court erred in overruling
his motion for summary judgment that Mauzy take nothing on his counterclaim under the
Declaratory Judgments Act. See Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem.
Code Ann. §§ 37.001-.011 (West 1986 & Supp. 1994). (34) He contends Mauzy was not entitled
to a declaratory judgment because Mauzy requested no relief that could not have been obtained
through a disposition of Howell's pending suit and that the counterclaim was merely a vehicle to
recover attorney's fees and frustrate non-suit. (35)

 Generally, the Declaratory Judgments Act is not available to settle disputes already
pending before the court. BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990);
Texas Liquor Control Bd. v. Canyon Creek Land Corp., 456 S.W.2d 891, 895 (Tex. 1970). 
Texas courts apply this rule whether the claim for declaratory relief is asserted in a separate
proceeding or as a counterclaim in the same proceeding. HECI Exploration Co. v. Clajon Gas
Co., 843 S.W.2d 622, 639 (Tex. App.--Austin 1992, writ denied); see also Staff Indus., Inc. v.
Hallmark Contracting, Inc., 846 S.W.2d 542, 547-48 (Tex. App.--Corpus Christi 1993, no writ)
(holding trial court erred in allowing declaratory-judgment counterclaim that presented no issues
beyond those raised in original suit); Hitchcock Properties, Inc. v. Levering, 776 S.W.2d 236, 239
(Tex. App.--Houston [1st Dist.] 1989, writ denied) (stating declaratory-judgment counterclaim
sought on an affirmative defense pleaded in original suit was improper). A counterclaim that
presents no new controversy, but exists solely to pave the way to an award of attorney's fees is
improper. Hitchcock Properties, 776 S.W.2d at 239; John Chezik Buick Co. v. Friendly
Chevrolet Co., 749 S.W.2d 591, 595 (Tex. App.--Dallas 1988, writ denied).

 A court may allow a declaratory-judgment counterclaim, however, if it is something
more than a mere denial of the plaintiff's claim and has greater ramifications than the original suit. 
See BHP Petroleum, 800 S.W.2d at 841-42; HECI Exploration Co., 843 S.W.2d at 638. A
counterclaim has greater ramifications than the original suit if it seeks affirmative relief. HECI
Exploration Co., 843 S.W.2d at 638-39. A counterclaim states a claim for affirmative relief if
it alleges that the defendant has a cause of action independent of the plaintiff's claim, on which
the defendant could recover benefits, compensation, or relief, even if the plaintiff were to abandon
or fail to establish his cause of action. BHP Petroleum, 800 S.W.2d at 841.

 In his counterclaim, Mauzy requested the court to declare that:



 any claims that the plaintiff Charles Ben Howell has standing to raise under
the Texas Election Code with respect to the reports filed or the campaign activities
of the defendant Oscar Mauzy, that all such reports and activities by the defendant
Oscar Mauzy have been conducted in accordance with the applicable provisions of
the Texas Election Code and the regulations of the Secretary of State thereunder. 
Defendant prays by way of counter-claim with respect to all issues raised by
plaintiff's pleading herein . . . that there be a final declaration by the Court that the
activities of the defendant Oscar Mauzy have been in conformity with the
applicable governing law.



(Emphasis added.) Mauzy's counterclaim was expressly confined to denying liability on the
claims Howell raised in his pleadings, and did not seek independent relief. Mauzy argues that his
counterclaim for declaratory judgment was proper because of his legitimate fear that Howell
would bring future actions, regardless of the outcome of the pending controversy. See 1 Texas
Civil Practice § 4.11, at 422 & n.118 (Diane M. Allen et al. eds., 1992 ed.) (citing Kieran v.
Johnson-March Corp., 7 F.R.D. 128 (D.C.N.Y. 1945)). 

 It is true that declaratory-judgment counterclaims are proper if a declaratory
judgment would have the effect of settling future disputes between the parties. See BHP
Petroleum, 800 S.W.2d at 842 (allowing declaratory-judgment rendered on counterclaim that
defined parties' obligations under ongoing contract for the foreseeable future); Winslow v. Acker,
781 S.W.2d 322, 328 (Tex. App.--San Antonio 1989, writ denied) (holding trial court did not err
in allowing declaratory-judgment counterclaim that would settle all future disputes regarding
royalties under deed). In the instant case, Howell and Mauzy have no ongoing relationship; the
events that are the subject of this suit were a one-time occurrence that are fully covered by the
original suit. See HECI Exploration Co., 843 S.W.2d at 639; John Chezik Buick, 749 S.W.2d
at 595.

 Because Mauzy's declaratory-judgment counterclaim presented no new controversy,
we sustain Howell's fifty-fourth point of error.



ATTORNEY'S FEES


 In his points of error sixty-one through sixty-eight, Howell asserts the award of
attorney's fees to the Mauzys was improper. In its final judgment, the trial court awarded the
Mauzys attorney's fees in the amount of: (1) $10,000 to Oscar Mauzy in accordance with a
previous interlocutory judgment; (2) $16,475 to Oscar Mauzy based on the stipulations of the
parties; (36) and (3) $4,625 to Anne Mauzy. (37)

 In his sixty-fifth point of error, Howell asserts the trial court erred in awarding
Anne Mauzy attorney's fees because she did not plead for attorney's fees. See Tex. R. Civ. P.
301 (providing judgment of court shall conform to pleadings). The Mauzys' amended answer and
counterclaim filed December 29, 1989, stated: "Defendant further prays by way of counterclaim
cause that he have and recover attorney's fees and costs in connection with this declaration of
rights and/or under the provisions of the Texas Election Code." The prayer states: "Anne and
Oscar Mauzy respectfully pray that Plaintiff take nothing by his suit; for their cost herein; for
reasonable attorney's fees, and for such other relief to which they may be entitled." (Emphasis
added).

 All pleadings shall be construed to do substantial justice. Tex. R. Civ. P. 45. The
record does not reflect that Howell specially excepted to the Mauzys' amended answer and
counterclaim. In the absence of special exceptions, we must construe a pleading in favor of the
pleader. Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982); Lawyers Sur. Corp. v. Royal
Chevrolet, Inc., 847 S.W.2d 624, 627 (Tex. App.--Texarkana 1993, writ denied). A pleading is
sufficient if it gives fair and adequate notice to the opponent. See Roark, 633 S.W.2d at 810;
Lawyers Sur. Corp., 847 S.W.2d at 627. Technical rules of pleading cannot defeat a right
substantially alleged. Barnes v. Patrick, 146 S.W. 154, 155 (Tex. 1912). We conclude that Anne
Mauzy pleaded sufficiently for attorney's fees. We overrule Howell's sixty-fifth point of error.

 Howell complains in his sixty-seventh and sixty-eighth points of error that the trial
court erred in awarding attorney's fees to Anne and Oscar Mauzy under the Declaratory
Judgments Act because the trial court improperly allowed the counterclaim for declaratory relief. 
See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (providing court may award reasonable and
necessary attorney's fees in proceeding under chapter 37). In its final judgment, the trial court
awarded Anne Mauzy and Oscar Mauzy attorney's fees in the amounts of $4,625 and $16,475,
respectively, in accordance with the parties' stipulations. (38) Of these amounts, the parties
stipulated that Anne Mauzy incurred $1,275 and Oscar Mauzy incurred $7,200 for obtaining a
declaratory judgment. Because we have held the trial court improperly allowed the declaratory-judgment counterclaim, we sustain Howell's sixty-seventh and sixty-eighth points of error with
regard to the $1,275 and $7,200 the Mauzys incurred in pursuing that counterclaim. See, e.g.,
HECI Exploration, 843 S.W.2d at 639 (holding attorney's fee award under Declaratory Judgment
Act unauthorized because counterclaim presented no new controversy); John Chezik Buick, 749
S.W.2d at 594 (holding declaratory-judgment counterclaim existing solely to pave the way for
attorney's fees improper).

 In his sixty-second point of error, Howell asserts the trial court erred in awarding
Oscar Mauzy attorney's fees exceeding $10,000. He argues that the parties agreed on March 24,
1988, that $10,000 was a reasonable attorney's fee for prosecuting Mauzy's counterclaim, and that
the amount in the judgment exceeded the agreed-upon sum. We note, however, that on July 17,
1992, the parties stipulated that the usual and customary attorney's fee that Oscar Mauzy incurred
since this Court dismissed the previous appeal was $16,475, the exact amount the trial court
awarded Oscar Mauzy. We overrule Howell's sixty-second point of error.

 In his sixty-sixth point of error, Howell asserts the trial court erred in awarding
Oscar Mauzy $16,475 in attorney's fees for defending against Howell's claims because no
pleadings supported the judgment. See Tex. R. Civ. P. 301. As discussed above, Mauzy
requested attorney's fees in his amended answer and counterclaim filed on December 29, 1989,
pleading that he was entitled to attorney's fees under the provisions of the Texas Election Code. (39) 
Of the amount the trial court awarded Oscar Mauzy based on the party's stipulations, $9,275 was
the amount Mauzy incurred in defending against Howell's claim. We overrule Howell's sixty-sixth point of error.

 In light of our disposition of Howell's sixty-second, sixty-fifth, sixty-sixth, sixty-seventh, and sixty-eighth points of error, we do not address his points of error sixty-one, sixty-three, and sixty-four raising other complaints about the trial court's award of attorney's fees to
the Mauzys.

 Because of our disposition of the points of error specified above, we do not address
Howell's remaining points of error.



CONCLUSION


 We reverse the portions of the judgment awarding the Mauzys relief on their
declaratory judgment counterclaim, and the attorney's fees awarded in connection with that
counterclaim, and render judgment that they take nothing in that regard. We affirm the remainder
of the judgment.



 

 John Powers, Justice

Before Justices Powers, Jones and Kidd

Reversed and Rendered in Part; Affirmed in Part

Filed: September 14, 1994

Do Not Publish Released for Publication May 24, 1995. Tex. R. App. P. 90(c).

1.   All citations to the Election Code are to the version in
effect in 1986 unless otherwise indicated.
2.   Anne Mauzy was the treasurer for three of Oscar Mauzy's
campaign funds. 
3.   Howell also asserted claims under section 251.008 of the
Election Code, providing opposing candidates with a cause of action
for illegal contributions and expenditures. 
4.   The trial court rendered declaratory judgment as follows: 
(1) all of Mauzy's filings with the Secretary of State in
connection with the 1986 primary and general elections were in
accordance with the applicable statutes and governing regulations
and there is no basis for Howell to recover damages, penalties,
injunctive, or other relief; (2) Mauzy substantially complied with
the campaign filing requirements of the Texas Election Code; (3)
the Election Code affords no remedy for Howell regarding Mauzy's
alleged conversion of campaign funds to personal use; (4) two loans
which Howell alleged were illegal were authorized by the Election
Code; (5) Howell did not have standing to assert the interests of
the State of Texas; and (6) Howell did not have standing to assert
any claims on behalf of involuntary plaintiffs named in his
petition.
5.   Howell asserts he would have simply nonsuited the Travis
County suit and pursued the Dallas action if the Mauzys had not
filed a counterclaim in Travis County.
6.   The amended version of the venue provision is as follows: 
"Venue for a criminal offense prescribed by this title is in the
county of residence of the defendant, unless the defendant is not
a Texas resident, in which case venue is in Travis County." Tex.
Elec. Code Ann. § 251.004 (West Supp. 1994).
7.   If the venue provision in section 251.019 of the Election
Code is jurisdictional, it cannot be waived, even by consent of the
parties. See Federal Underwriters Exch. v. Pugh, 174 S.W.2d 598,
600 (Tex. 1943); see also Mingus v. Wadley, 285 S.W. 1084, 1088
(Tex. 1926) (holding in special proceedings not within common-law
jurisdiction statutory designation of venue is mandatory and
jurisdictional). 
8.   The trial court noted that under section 15.064(a) of the
Texas Civil Practice and Remedies Code, it must determine venue
questions from the pleadings and affidavits. Therefore, both
Mauzys initially testified under a bill of exceptions in the
hearing on the motion to transfer venue. However, the trial court
subsequently admitted their testimony in connection with the
hearing on Howell's plea in abatement. Unlike the trial court,
this Court must consider the entire record in reviewing the trial
court's ruling on the motion to transfer venue. See Tex. Civ.
Prac. & Rem. Code Ann. § 15.064(b) (West 1986). 
9. [9]  A second residence includes the following elements: (1) a fixed place of abode within the
possession of the defendant; (2) occupied or intended to be occupied over a substantial period of
time; (3) which is permanent rather than temporary. Snyder, 241 S.W.2d at 140. The record
reflects that the Mauzys purchased their Austin home and were living in it in 1987. 
10.   The trial court based its ruling on the following findings: 
(1) After the Mauzys made a general appearance in the Austin
lawsuit in October 1986, Howell did not thereafter diligently seek
to perfect service in the Dallas action until March 1987, some
months after he had filed amended pleadings in the Austin action;
(2) Howell had sought to compel the Austin trial court to issue
certain orders and schedule certain hearings by filing a mandamus
petition in the supreme court in October 1986 in which he alleged,
"Travis County has obtained exclusive jurisdiction and venue of the
cause of action."; and (3) Howell had represented to the trial
court in October 1986 that he would dismiss the Dallas action if
the Mauzys would appear and answer in the Austin lawsuit. On
appeal, Howell attacks the first and third findings. Because we
hold that the second finding is sufficient to uphold the trial
court's denial of the plea in abatement, we do not address Howell's
complaints about the other findings.
11.   The parties agree that the Dallas and Austin suits present
the same controversy, and have essentially the same parties,
although Howell in May 1987 nonsuited Anne Mauzy in the Austin
suit.
12.   The second court has jurisdiction to determine disputed
fact issues connected with the plea in abatement. Hartley v.
Coker, 843 S.W.2d 743, 747 (Tex. App.--Corpus Christi 1992, no
writ). If that court overrules the plea in abatement, it has
dominant jurisdiction over the controversy unless and until an
appellate court reverses its ruling on the plea in abatement. 
Curtis, 511 S.W.2d at 267; Russell v. Taylor, 49 S.W.2d 733, 738
(Tex. Comm'n App. 1932, opinion adopted). 
13.   The regional presiding judge in Dallas, Judge Ron Chapman,
appointed Judge Guy Jones to preside in the Dallas suit. Judge
Jones was the district judge for the 202nd District Court of Bowie
County. Howell raises numerous complaints about the process of
appointment, but because we will sustain his fifty-seventh point of
error, we do not address these complaints.
14.   The trial court stated that the matter was then pending in
Dallas County, Texas and had been set for hearing "by agreement of
Counsel" pursuant to the Local Rules of Practice of the 202nd
District Court. In its order, the court stated that it was
"sitting by designation as Judge of the 134th District Court of
Dallas County, Texas." 
15.   The county seat is the place where the county courthouse
is located. Bridgeman, 183 S.W.2d at 708. In Bridgeman, the
supreme court held there was substantial compliance with the
constitution when the judge signed the judgment at his residence
instead of at the courthouse in open court. Id. Unlike Bridgeman,
the proceedings in the present case were held outside the district
and the county. 
16.   Whitner construed an earlier version of article V, § 7
providing: "[The district judge] shall hold the regular terms of
his court at the county seat of each county in his district . . .
." Whitner, 34 S.W. at 596. The court interpreted this provision
to mandate that regular terms of the district court could not be
held elsewhere than the county seat. Id.
17.   It appears from the trial-court order and the statement of
facts from the hearing that the trial judge was of the opinion that
Howell's counsel either agreed to have the hearing in Bowie County,
or waived his objections by not raising them before the hearing. 
The order stated: "[Howell] filed with the Court on November 21,
1988 an objection to the hearing being held in this matter outside
the boundaries of Dallas County, Texas and the Court being of the
opinion that said objection was not well-taken and further that any
such objection had been waived by the plaintiff and his counsel,
said objection was overruled." The court apparently believed
Howell waived the objection by not raising it sooner.
18.   Specifically, the judge may (1) hear and determine all
preliminary and interlocutory matters in which a jury may not be
demanded; (2) hear and determine uncontested or agreed cases and
contests of elections pending in his district, unless a party to
the suit objects; and (3) sign all necessary orders and judgments
in those matters. Tex. Gov't Code Ann. § 24.017(b).
19.   Some cases have held that section 24.017 authorizes a
district judge who is assigned to another district to conduct
proceedings in the assigned case in his home district. See Phagan
v. State, 510 S.W.2d 655, 662-63 (Tex. Civ. App.--Fort Worth 1974,
writ ref'd n.r.e.) (overruling point of error complaining that
rendition of judgment in different district than that in which case
pending violated constitution because record did not show where
judgment rendered and because article 1919 § 2 [now § 24.107]
expressly authorized action); Winton v. Davenport, 275 S.W.2d 725,
727 (Tex. Civ. App.--Fort Worth 1955, no writ) (holding article 1919
authorized visiting judge to overrule his own order granting new
trial when he was back in his home district); see also Lowery, 518
S.W.2d at 903-04 (Stephenson, J., dissenting). However, as stated
in the text of our opinion, section 24.017 plainly applies solely
within multicounty judicial districts.
20.   Judge Jones heard the motion to transfer and plea in
abatement in the 202nd judicial district, which is composed solely
of Bowie County. Tex. Gov't Code Ann. § 24.381(a) (West 1988). 
The case was pending in the 134th Judicial District, composed of
Dallas County. Tex. Gov't Code Ann. § 24.236(a) (West 1988).
21.   The route by which the trial court rendered final judgment
is convoluted. By order dated March 24, 1988, the trial court
granted Oscar Mauzy's amended motion for summary judgment, and
subsequently rendered a purported final judgment on April 18, 1988. 
At that time, Anne Mauzy was not a defendant in the suit because
Howell had nonsuited her. On appeal, this Court held that the
judgment was interlocutory and dismissed the appeal for want of
jurisdiction. See Howell v. Mauzy, 774 S.W.2d 274, 276 (Tex.
App.--Austin 1989, writ denied). After dismissal, Judge Guy Jones
ordered the Dallas suit abated and transferred to Travis County, at
which time the Travis County district court ordered the two suits
consolidated. Because Anne Mauzy had remained a defendant in the
Dallas suit, she became a defendant in the consolidated suit. 
Although we have held that the order transferring the Dallas suit
to Travis County was void, Howell amended his petition after
consolidation, and added Anne Mauzy as a defendant. On Anne
Mauzy's motion, the trial court rendered a partial summary judgment
in her favor. The trial court subsequently rendered final judgment
based on its previous summary judgments as to both Oscar and Anne
Mauzy.
22.   Oscar Mauzy filed a motion for summary judgment, and later,
an amended motion for summary judgment. Under Texas Rule of Civil
Procedure 65, when a pleading is amended, the original pleading
should no longer be regarded as part of the record. However, the
trial court apparently treated the amended motion as a supplemental
motion and issued two orders, granting each of the motions. The
amended motion for summary judgment asserted the grounds contained
in the original motion, as well as several other grounds.
23.   Under the 1986 version of the Election Code, the Secretary
of State had the authority to interpret and administer the
provisions of Title 15. Election Code § 251.017(g)(4).
24.   Mauzy also asserted in his amended motion for summary
judgment that: he had substantially complied with all campaign
filing requirements; all of his contributions, loans, or
expenditures were lawful and consistent with applicable statutes;
Howell has no standing to seek damages, penalties or injunctive
relief for the causes of action he asserts; Howell has no standing
to assert the interests of the State; Howell has no standing to
assert the interests of parties not before the court; and Howell
cannot show injury in fact or in law that would entitle him to
recover.
25.   Howell does not dispute this assertion.
26. Howell also asserts that the loans were "involved" in the
general election because anything Mauzy did in order to win the
primary was part of the process of winning the general election. 
Howell's source for this argument is Election Code section 251.008
providing: "Any person who knowingly makes or knowingly accepts an
unlawful campaign contribution . . . shall be civilly liable to
each opposing candidate whose name appeared on the ballot in the
election in which the unlawful contribution or expenditure was
involved . . . ." (Emphasis added). This section provides civil
liability for unlawful campaign contributions or expenditures, not
for unreported contributions or expenditures as in section
251.011(k). Howell states in his brief that he does not contend
the loans were unlawful, but that Mauzy failed to comply with
statutory disclosure requirements. Therefore, the language in
section 251.008 is inapplicable.
27.   Section 251.011(k) confers standing to challenge reporting
violations on "each opposing candidate in the election in which
same should have been reported." Section 251.011(4)(B)(i) directs
every opposed candidate to file "three sworn statements relating to
the election in which such person is involved . . . not later than
the 30th day prior to the election, not later than the 7th day
prior to the election, and not later than the 30th day after the
election, respectively." 
28.   Howell also argues that such an interpretation of the
statute leaves a "huge gap" because if there is an uncontested
primary, no one may challenge the unopposed candidate's reporting
of expenditures and contributions. To the contrary, section
251.011(l) provides for civil liability in such cases to the State
of Texas; section 251.011(j) provides for criminal liability.
29.   Although the loan proceeds were expended during the primary
elections, Mauzy made the interest payment a little over a month
before the general election.
30.   Although Mauzy argues that personal loans made to a
candidate in the due course of business are not reportable
according to the Secretary of State's "1986 Political Funds
Reporting and Disclosure Directive," certain information about bank
loans made in the due course of business must be reported if anyone
guaranteed or otherwise assisted in obtaining the loan. Election
Code § 251.011(c)(1)(D). The summary judgment record indicates
that the Allied Bank loan was guaranteed by several individuals,
which information Mauzy did report.
31.   An example of the reported expenditure dates are as
follows: for "Visa," 6/7, 7/1, 8/9, 8/12, 8/27, 8/27, 8/27, 10/6,
11/5, 11/26, 12/29; for "Mastercard," 6/7, 6/25, 7/1, 7/23, 8/8,
8/8, 8/21, 9/9, 9/15, 10/6, 10/18, 11/19, 12/3, 12/4, 12/18, 12/31,
12/31.
32.   Additionally, the letter interpreted the Election Code as
amended in 1987, although the Secretary of State was of the opinion
that the 1987 amendment did not substantively change this area of
the law. 13 Tex. Reg. 2855, 2856 (1988).
33.   Interpretive rules are those that interpret and apply the
provisions of the statute under which an agency operates. See
Cooper, supra, at 174-75. "No sanction attaches to the violation
of an interpretive rule as such; the sanction attaches to the
violation of the statute, which the rule merely interprets. . . . 
Some interpretive rules serve much the same purpose as opinions of
general counsel for the agency. . . . They state the
interpretation of ambiguous or doubtful statutory language which
will be followed by the agency unless and until the statute is
otherwise authoritatively interpreted by the courts." Id. at 175;
see also Alfred C. Aman, Jr. & William T. Mayton, Administrative
Law, § 4.2.2, at 86 (West 1993) (noting that policy statements do
not establish binding norms and are marked by the absence of a
substantial impact on existing rights and obligations). 
34.   Although Oscar Mauzy did not move for summary judgment on
his counterclaim for declaratory relief, in its order on Mauzy's
amended motion for summary judgment, the trial court rendered
declaratory judgment in Mauzy's favor. Texas Rule of Civil
Procedure 166a(c) requires the motion for summary judgment to
"state the specific grounds therefor." Howell raises no complaint
in this regard, and we are precluded from addressing unassigned
points of error. See Vawter v. Garvey, 786 S.W.2d 263, 264 (Tex.
1990); San Jacinto River Auth. v. Duke, 783 S.W.2d 209, 210 (Tex.
1990). We also note that Howell himself moved for summary judgment
that Mauzy take nothing under his counterclaim for declaratory
relief, and thus the issue was expressly before the trial court. 
35.   Howell preserved error on this point by raising it before
judgment in his motion for summary judgment on the counterclaim,
and arguing it in the hearing on the motions for summary judgment. 
See HECI Exploration Co. v. Clajon Gas Co., 843 S.W.2d 622, 638
(Tex. App.--Austin 1992, writ denied).
36.   Although the parties stipulated to the usual and customary
amount of attorney's fees that the Mauzys incurred since this Court
dismissed the previous appeal, the stipulation was subject to
Howell's objection that the Mauzys were not legally entitled to
recover any attorney's fees. 
37.   The trial court awarded Oscar Mauzy $10,000 for attorney's
fees incurred before the previous appeal. The trial court awarded
the remaining amounts to Anne and Oscar Mauzy for attorney's fees
incurred after this Court dismissed the previous appeal. 
38.   In the earlier judgment from which Howell first appealed,
the trial court awarded Oscar Mauzy $10,000 "for obtaining the
declarations of law as set out on March 24, 1988 . . . ." However,
in the final judgment from which Howell now appeals, the trial
court stated that the $10,000 award was in accordance with an
interlocutory judgment. That interlocutory judgment awarded the
$10,000: "for services performed in obtaining the summary
judgments that were entered in this cause on March 24, 1988." 
Thus, although the trial court initially awarded Oscar Mauzy
attorney's fees for obtaining a declaratory judgment, in the final
judgment the court awarded fees generally for services performed in
the case. 
39.   Section 254.231(d) provides: "Reasonable attorney's fees
incurred in a suit may be awarded to the defendant if judgment is
rendered in the defendant's favor." Tex. Elec. Code Ann. §
254.231(d) (West Supp. 1994). This provision was effective
September 1, 1987, after Howell filed suit. Howell does not assert
that section 254.231 is inapplicable to this suit, and we note that
in the absence of express legislative intent to the contrary, laws
merely affecting procedure or remedies may be applied
retrospectively. Davis v. State, 846 S.W.2d 564, 570 (Tex.
App.--Austin 1993, no writ).