TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




ON MOTION FOR REHEARING







NO. 03-05-00329-CV






Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens//Cross-Appellees, Michael Ousey,
Kirsten Ousey, Robert F. West and Elizabeth West


v.


Appellees, Michael Ousey, Kirsten Ousey, Robert F. West and Elizabeth West//Cross-Appellants, Robert L. Owens, Jr. and Sylvia Lee Owens







FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT

NO. 03-1778, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING





O P I N I O N


 We withdraw our opinion and judgment issued June 8, 2007, and substitute the
following in its place. We overrule appellees' motion for rehearing.

 This is an appeal from a final judgment granting a mandatory permanent injunction
to enforce restrictive covenants. The injunction compelled Robert L. Owens, Jr. and Sylvia Lee
Owens to remove a mobile home from a lot they owned adjacent to lots owned by Michael and
Kirsten Ousey and Robert and Elizabeth West. The Owenses appeal, contending that the injunction
purported to enforce restrictive covenants that had expired in 2001, that purported 2003
"amendments" to "extend" the covenants were void, and that the covenants cannot be enforced under
an implied negative reciprocal easement theory. Appellees bring a cross-appeal contending that the
district court erred in refusing to award them damages for the Owenses' breaches of restrictive
covenants both on the lot in question and on an adjacent Owens-owned lot where the Owenses had
initially placed the mobile home. For reasons explained below, we affirm in part, reverse in part,
render in part, and remand in part. 

 

BACKGROUND

 Appellees and the Owenses own adjoining properties in a residential, unincorporated
area of Hays County near San Marcos. The Owenses own two adjoining lots, a .23-acre lot located
to the immediate west of, and sharing a common boundary with, a .715-acre lot. The Owenses' lots
are located at essentially the southeast corner of three lots owned by appellees. Along the north and
west boundaries of the Owenses' .23-acre lot are two lots totaling roughly 15 acres owned by the
Ouseys. The Wests own a .716-acre lot bordering the Owenses' .715-acre lot to the north and one
of the Ouseys' lots to the east. (1) 

 The deeds to both of the Owenses' lots contain restrictive covenants prohibiting,
among other things, the placement of mobile homes on the property. The deed to the .715-acre lot,
executed in 1976, specifies that the restrictive covenants:


 shall be in full force and effect for a period of twenty-five years. However, any
restrictive covenant or covenants may be renewed at the end of said 25 year period,
or may, at any time, be altered amended or cancelled by a majority vote of the owners
of the property, each lot, whether owned by one or more persons, having and being
entitled to one vote, on any question of alteration, amendment of [sic] cancellation
of any restriction. (2)


By contrast, the deed to the .23-acre lot, executed in 1984, does not specify a time limit or term for
its restrictive covenants.

 In October 2003, the Owenses placed a mobile home on the .23-acre lot. Appellees
notified the Owenses of their objection to the placement of the mobile home on that lot, maintaining
that it violated restrictive covenants on the property. On October 22, 2003, appellees voted to
"amend" and "extend" the deed restrictions on the .715-acre lot. On the same date, appellees
notified the Owenses of this action. Thereafter, on or about November 3, 2003, the Owenses moved
the mobile home to their .715-acre lot. On or about November 6, 2003, appellees recorded a
document entitled "Amendment/Extension of Deed Restrictions," pertaining to the Owenses' .715-acre lot, in the real property records of Hays County. This document purported to "extend and
amend the covenants" applicable to the .715-acre lot, including those prohibiting mobile homes, and
added some new restrictions. 

 After the Owenses refused to remove the mobile home from their .715-acre lot,
appellees sued for damages and a mandatory permanent injunction requiring the Owenses to remove
the mobile home from their property. Appellees asserted claims that (1) the Owenses violated "a
deed restriction" applicable to the .23-acre lot by placing a mobile home there on or about October
1 and refusing to remove it until on or about November 4, 2003; (2) the Owenses violated
"applicable deed restrictions" on the .715-acre lot by "moving and installing a mobile home" there
and refusing to remove it; and alternatively, (3) the placement of the mobile home on either lot
violated implied reciprocal negative easements applicable to both lots. Appellees also alleged that
the Owenses' actions constituted a nuisance. The Owenses counter-claimed alleging that appellees'
"Amendment/Extension of Deed Restrictions" "creates a cloud on Counter-Plaintiffs's land title"
and requested a declaratory judgment that the instrument "is void and of no force or effect." 

 The case was tried to the court on mostly stipulated facts. The district court rendered
judgment that:


1. The Owenses violated deed restrictions applicable to their .23-acre lot (those without a
specified term or duration) by placing a mobile home there between October 1 and
November 3, 2003.

 

2. The Owenses violated deed restrictions applicable to their .715-acre lot (those effective "for
a period of twenty-five years") by placing a mobile home on that lot on November 3, 2003,
and refusing to remove it. The court granted a mandatory injunction compelling the
Owenses to move the mobile home off their property within thirty days after the judgment
was signed. 


3. "The Court finds for [the Owenses] as to [appellees'] claims of nuisance . . . and denies
[appellees'] claim." 


4. "[Appellees] not recover actual damages or any other kind of damages or interest from [the
Owenses] and [the Owenses] not recover actual damages or any other kinds of damages from
[appellees]." 


5. Neither party would be awarded attorney's fees but, in the event of an appeal, each party
would recover appellate attorney's fees if successful. 



 The district court subsequently entered findings of fact and conclusions of law. 
Among other facts, the court found that appellees had proven statutory damages as to the Owenses'
.23-acre lot of $6,000 and $99,000 as to the Owenses' .715-acre lot. See Tex. Prop. Code Ann.
§ 202.004(c) (West 2007) (providing that a court "may assess civil damages for the violation of a
restrictive covenant in an amount not to exceed $200 for each day of the violation"). It also found
that the Wests had incurred loss of value to their property of $36,000 and that the Ouseys had
incurred a loss of $60,000. However, the district court concluded that "[i]n accordance with the
Court's discretion," appellees were "not entitled to recover damages" or interest. 

 The district court also found that appellees had incurred $14,024.70 in attorney's fees
through trial, that the Owenses had incurred $20,000 in attorney's fees through trial, and that each
party would incur $5,000 and $3,000 in attorney's fees on appeal to the court of appeals and the
supreme court, respectively. The court concluded that "[i]n accordance with the Court's discretion,"
neither party was entitled to recover their attorney's fees through judgment, but each party could
recover their appellate attorney's fees if successful. 


ANALYSIS

 The Owenses bring eight issues on appeal. They do not challenge the judgment that
they violated restrictive covenants encumbering their .23-acre lot (where they initially placed the
mobile home) but assert that the district court erred in rendering judgment that they violated
restrictive covenants encumbering their .715-acre lot and in awarding mandatory injunctive relief. 
In their first issue, the Owenses argue that the restrictions encumbering their .715-acre lot made the
basis for appellees' claims expired by their terms in August 2001 and could not be "amended" or
"extended" by appellees' actions over two years after that date. The Owenses contend in their eighth
issue that the district court erred in refusing to grant their request for a declaration that appellees'
purported "amendment" or "extension" of the deed restrictions is void. In their second and seventh
issues, the Owenses assert that appellees lack standing to enforce the restrictive covenants
encumbering their .715-acre lot. The Owenses' remaining issues challenge the applicability of the
implied negative restrictive easement theory on several grounds, including their contention that this
theory cannot apply when, as here, the subject property is covered by express deed restrictions that
had expired by their terms. 

 Appellees bring a cross-appeal asserting that the district court abused its discretion
in denying their claims for statutory damages, common-law damages as to the .715-acre lot, (3) and
attorney's fees. They also complain that the district court abused its discretion in awarding the
Owenses conditional appellate attorney's fees. 

 

The Owenses' appeal

 Applicability of express deed restriction

 We consider first whether express deed restrictions applied to the Owenses' .715-acre
lot. When construing restrictive covenants, we apply the general rules of contract construction. 
Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). We examine the covenants as a whole in
light of the circumstances present when the parties entered into the agreement. Id. Our primary
concern is to ascertain and give effect to the true intention of the parties as expressed in the
instrument. See Gulf Ins. Co. v. Burns Motors, 22 S.W.3d 417, 424 (Tex. 2000). Like other
questions of law, we review a trial court's construction of restrictive covenants de novo. Raman
Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, 178 S.W.3d 384, 390
(Tex. App.--Fort Worth 2005, pet. denied); City of Pasadena v. Gennedy, 125 S.W.3d 687, 692
(Tex. App.--Houston [1st Dist.] 2003, pet. denied). 

 The deed to the Owenses' .715-acre lot contains restrictive covenants prohibiting
"noxious or other offensive activity," structures other than "one single family dwelling unit not to
exceed two stories in height," any "mobile home, house trailer, tent, shack, garage or other out
building [that] shall be used for residential purposes," or moving a dwelling situated outside the lot
onto the lot or allowing it to remain there. It further provided that these restrictions:


 shall be in full force and effect for a period of twenty-five years. However, any
restrictive covenant or covenants may be renewed at the end of said 25 year period,
or may, at any time, be altered, amended or cancelled by a majority vote of the
owners of the property, each lot . . . having and being entitled to one vote, on any
question of extension of said restrictions, and on any question of alteration,
amendment of [sic] cancellation of any restriction.



 The deed was executed on October 22, 1976. Under its terms, the restrictive
covenants were to remain "in full force and effect for a period of 25 years," or only until
October 22, 2001. Appellees contend that the "amendments" and "extension" of the deed
restrictions that they voted to approve on October 22, 2003, and recorded on or about November
3--two years after the 25-year period had expired--made the restrictions effective through the
relevant period. The Owenses contend that because the deed restrictions expired by their terms in
October 2001, appellees necessarily could not have "extended" or "amended" the restrictions two
years thereafter. Appellees point to the provisos that "any restrictive covenant or covenants may be
renewed at the end of said 25 year period, or may, at any time, be altered, amended or cancelled." 
(Emphasis added.) They urge that these terms allow them to amend the restrictions "at any time,"
even two years after the "end of said 25 year period." We agree with the Owenses. 

 We must construe restrictive covenants as a whole, give effect to every sentence,
clause, and word of a covenant, and avoid constructions that would render parts of the covenant
superfluous or inoperative. See City of San Antonio v. City of Boerne, 111 S.W.3d 22, 29
(Tex. 2003). Appellees' construction, while literally supported by the words "at any time" if read
in isolation, is inconsistent with the deed restrictions as a whole and renders the explicit 25-year term
superfluous. Read in its proper context, the provision necessarily means that the restrictions may
be amended "at any time" while they remain in effect. Similarly, the provision that the restrictions
may be extended "at the end of said 25 year period" does not contemplate a time two years after the
end of that period. (Emphasis added.) The fact that the property code requires restrictive covenants
to be "liberally construed," see Tex. Prop. Code Ann. § 202.003(a) (West 2007), does not change
our analysis--even under a liberal construction, the plain language of the deed states that the
restrictive covenants are in effect for a 25-year period. 

 For these reasons, we conclude that the express restrictive covenants in the deeds to
the Owenses' .715-acre lot had expired long before October 2003, when the Owenses moved a
mobile home onto the property, and that appellees' purported "extensions" and "amendments" to the
restrictions were void and ineffective. We sustain the Owenses' first and eighth issues, and need not
reach their second and seventh issues, which concern appellees' standing to enforce these
restrictions. 


 Implied reciprocal negative easement 

 In the alternative, appellees plead that even if the express deed restrictions had
expired, the Owenses were still barred from placing a mobile home on their property under an
implied reciprocal negative easement theory. An implied reciprocal negative easement may arise
or operate when: 


 an owner of real property subdivides it into lots and sells a substantial number of
those lots with restrictive covenants designed to further the owner's general plan or
scheme of development. The central issue is usually the existence of a general plan
of development. The lots retained by the owner, or lots sold by the owner from the
development without express restrictions to a grantee with notice of the restrictions
in the other deeds, are burdened with what is variously called an implied reciprocal
negative easement, or an implied equitable servitude, or negative implied restrictive
covenant, that they may not be used in violation of the restrictive covenants
burdening the lots sold with the express restrictions.



Evans v. Pollock, 796 S.W.2d 465, 466 (Tex. 1990). The Owenses challenge the application of this
principle on several grounds, (4) including that an implied reciprocal negative easement cannot arise
where, as here, the subject property was sold with express restrictions that are the same as those
allegedly implied. We agree with the Owenses.

 As the supreme court observed in Evans, the implied reciprocal negative easement
doctrine applies to enforce restrictions against lots "retained by the owner, or lots sold . . . without
express restrictions to a grantee with notice of the restrictions in the other deeds." Id. (Emphasis
added). The reason courts imply restrictions on these lots is to give effect to the general
development scheme intended by the grantor. Id. But here, the deed to the Owenses' .715-acre lot
contains express restrictions that reflect the grantor's intent. We conclude that no restrictions may
be implied in the face of the express deed restrictions. We sustain the Owenses' third issue and need
not reach their remaining issues. 


 Disposition 

 In light of our disposition of the Owenses' issues, we must reverse the portions of the
district court's judgment holding that the Owenses violated restrictive covenants encumbering their
.715-acre lot and granting injunctive relief compelling them to move the mobile home off this lot. 
The Owenses are also entitled to a declaration that appellees' post-expiration "extension" or
"amendment" of the restrictive covenants applicable to the .715-acre lot is void. 

 As the Owenses are now the prevailing party on their declaratory judgment claim, we
will remand the issue of their attorney's fees to afford the district court the opportunity to exercise
its discretion to decide whether to award them. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009
(West 1997); McMillin v. State Farm Lloyds, 180 S.W.3d 183, 211 (Tex. App.--Austin
2005, pet. denied).

 On rehearing, appellees complain that this Court erred in its original opinion in
rendering a declaratory judgment in favor of the Owenses and remanding the issue of their attorney's
fees under that cause of action. Appellees insist that the Owenses' declaratory-judgment
counterclaim presented no new controversy apart from the issues raised in appellees' suit and
therefore could not support an attorney's fee award. We disagree. 

 The "Declaratory Judgment Act is not available to settle disputes already pending
before a court," BHP Petroleum Co. v. Millard, 800 S.W.2d 838, 841 (Tex. 1990), and it cannot be
used as a vehicle for defendants to obtain attorney's fees merely for resisting the plaintiff's right to
recover. See HECI Exploration Co. v. Clajon Gas Co., 843 S.W.2d 622, 638-639
(Tex. App.--Austin 1992, writ denied). However, a counterclaim for declaratory relief is
appropriate where it is more than a mere denial of the plaintiff's claim and it has greater
ramifications than the original suit. BHP Petroleum Co., 800 S.W.2d at 842. "A counterclaim has
greater ramifications than the original suit if it seeks affirmative relief." Howell v. Mauzy,
899 S.W.2d 690, 706 (Tex. App.--Austin 1994, writ denied). To state a claim for affirmative relief,
a defendant must allege a cause of action "independent of the plaintiff's claim on which the
defendant could recover benefits, compensation, or relief, even if the plaintiff were to abandon or
fail to establish his cause of action." Id. For example, in the context of suits asserting breaches of
contracts or deeds, declaratory counterclaims seeking construction of such instruments may
constitute claims for affirmative relief because, in contrast to a "one-time occurrence" giving rise
to the plaintiff's suit, they concern the parties' ongoing and future relationship. BHP Petroleum Co.,
800 S.W.2d at 840-42; Indian Beach Prop. Owners' Ass'n v. Linden, 222 S.W.3d 682, 702
(Tex. App.--Houston [1st Dist.] 2007, no pet.).

 Appellees attempt to equate this case with decisions of this Court holding that certain
declaratory counterclaims failed to state claims for affirmative relief. In Howell v. Mauzy, Howell
sued Mauzy for violating the Texas Election Code and Mauzy counterclaimed for a declaratory
judgment that all of his campaign activities complied with the Election Code. Howell, 899 S.W.2d
at 706. This Court found that Mauzy was not entitled to recover on his declaratory judgment
counterclaim because the claim "was expressly confined to denying liability on the claims Howell
raised in his pleadings, and did not seek independent relief." Id. at 706-707. Similarly, in HECI
Exploration Co., this Court held that a defendant gas company could not recover attorney's fees on
its counterclaim in which it sought a declaration of its rights and obligations under a gas-purchasing
contract with the plaintiff. HECI Exploration Co., 843 S.W.2d at 638-639. This Court noted that
the parties had no ongoing relationship and that the alleged harm resulted from a one-time
occurrence that was fully covered by the plaintiff's original suit. Id. Because the defendant's
declaratory-judgment counterclaim sought nothing more than to avoid liability for its allegedly
deficient performance under the contract, the defendant could not recover attorney fees under the
declaratory judgments act. Id.

 The Owenses' declaratory-judgment counterclaim is distinguishable from those in
Howell and HECI because it seeks affirmative relief beyond the subject of appellees' suit. While
appellees' suit is predicated on the violation of restrictive covenants prohibiting the placement of
mobile homes on the Owenses' property, the Owenses counterclaim alleges that appellees'
"Amendment/Extension of Deed Restrictions" "creates a cloud on Counter-Plaintiffs' land title" and
seeks a declaration that the instrument is void in its entirety. The restrictions contained in the
instrument include not only prohibitions against mobile homes, but also a ban on using the property
for "any business, commercial, trade, mercantile or professional purpose"; a prohibition against
subdividing the property; limitations on structures to single-family dwellings, minimum and
maximum size restrictions on same, and prohibitions against using "modular, prefabricated or pre-built exterior or interior walls, or wall sections" in such structures; bans on the raising, breeding, or
keeping of rabbits, poultry, dogs, cats or other animals other than household pets ("so long as no
such household pets are kept in such numbers as to constitute an annoyance or nuisance to owners
of other lots"); and a prohibition on "oil drilling, refining, or mining" on the lot. By seeking to
invalidate these and other restrictions contained in the "Amendment/Extension of Deed
Restrictions," the Owenses' counterclaim is one for affirmative relief extending beyond the subject
matter of appellees' suit. We further observe that the declaration sought does not merely concern
a past or current violation of restrictive covenants, but clarifies and defines the parties' ongoing
relationship into the future. BHP Petroleum Co., 800 S.W.2d at 840-42; Indian Beach Prop.
Owners' Ass'n., 222 S.W.3d at 702. We hold that the Owenses asserted a proper declaratory-judgment claim that potentially could support an award of attorney's fees, if the district court
exercises its discretion to award them. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009. 


Appellees' cross-appeal 

 Damages

 In their first issue, appellees complain that the district court abused its discretion in
refusing to award them statutory damages on their claims to enforce the restrictive covenants
applicable to the Owenses' two lots. Section 202.004 of the property code authorizes trial courts to
assess civil damages for the violation of a restrictive covenant for an amount up to $200 per day of
violation. See Tex. Prop. Code. Ann. § 202.004(c). The district court found that appellees had
proven statutory damages of $6,000 from the roughly one-month period in which the Owenses had
placed the mobile home on their .23-acre lot, and $99,000 from the period after the Owenses moved
the mobile home to their .715-acre lot. Section 202.004, however, states that the court "may" award
these damages, see Tex. Prop. Code. Ann. § 202.004(c), and the district court exercised its discretion
not to award appellees any statutory damages. 

 Having held that the restrictive covenants in the deed to the Owenses' .715-acre lot
were no longer in effect when they placed the mobile home on that property, we affirm the district
court's judgment denying appellees statutory damages based on those acts. However, the Owenses
have not challenged the district court's judgment that they violated the restrictive covenants on their
.23-acre lot. The district court chose to exercise its discretion to deny appellees statutory damages
for these violations in the context of rendering a judgment that granted appellees mandatory
injunctive relief compelling them to remove the mobile home from their other lot. Now that we have
reversed that injunction, we believe that the district court should have the opportunity to revisit how
it should exercise its discretion in deciding whether to award appellees statutory damages for the
Owenses' breach of the restrictive covenants on their .23-acre lot. Accordingly, we will remand this
issue to the district court. 

 Appellees also complain that the district court abused its discretion in refusing to
award them common-law damages for the Owenses' breach of restrictive covenants on the .715-acre
lot. For the same reasons that they were not entitled to injunctive relief based on the Owenses'
placement of a mobile home on this lot, appellees were not entitled to damages from those acts.
Further, having reviewed the record, we find no evidence of such damages. Consequently, the
district court did not abuse its discretion in its ultimate determination not to award appellees
common-law damages for the Owenses' breach of restrictive covenants on the .715-acre lot. 


 Appellees' attorney's fees

 Appellees also contend that the district court abused its discretion in refusing to award
the $14,024 that it found they had incurred in attorney's fees. Appellees rely on section 5.006 of the
property code, which provides that a trial court "shall allow as to a prevailing party" who asserted
an action based on breach of restrictive covenant "reasonable attorney's fees." Tex. Prop. Code Ann.
§ 5.006(a) (West 2003) (emphasis added). Appellees are no longer a prevailing party on their claims
that the Owenses breached restrictive covenants encumbering their .715-acre lot. However, they
remain a prevailing party on their claims concerning the Owenses' .23-acre lot. Accordingly, we
remand to the district court to segregate and award the attorney's fees relating to this claim. See
Varner v. Cardenas, 218 S.W.3d 68, 69 (Tex. 2007); Tony Gullo Motors I, L.P. v. Chapa,
212 S.W.3d 299, 314 (Tex. 2006) (remanding because evidence of attorney's fees for entire case is
some evidence of what amount of segregated fees should be). 


 The Owenses' appellate attorney's fees

 Finally, appellees contend that the district court erred as a matter of law in awarding
the Owenses appellate attorney's fees conditioned on their success on appeal. They observe that,
under the court's original judgment, the Owenses had no statutory or contractual basis for an
attorney's fees award. The Owenses do not dispute this argument. We reverse this award but
remand the issue to the district court for consideration alongside the Owenses' entitlement to
attorney's fees under their declaratory judgment action. 


CONCLUSION

 We reverse the portions of the district court's judgment holding that the Owenses'
.715-acre lot was encumbered by restrictive covenants past August 2001, that they violated such
restrictions by placing a mobile home on that lot, and enjoining them to remove the mobile home
from that property. We render judgment declaring that appellees' 2003 post-expiration "extensions"
or "amendments" to these deed restrictions are void and ineffective. We affirm the district court's
judgment denying appellees recovery of statutory and common-law damages for the Owenses'
alleged breach of restrictive covenants on the .715-acre lot. 

 To enable the district court to exercise its discretion in light of our ruling, we reverse
and remand the issues of (1) whether the Owenses should be awarded attorney's fees under their
declaratory judgment claim, including appellate attorney's fees, and (2) whether appellees should
be awarded their statutory damages under section 202.004 of the property code relating to the
Owenses' breach of restrictive covenants encumbering their .23-acre lot. We also remand the issue
of appellees' attorney's fees under section 5.006(a) of the property code so the district court can
segregate and award the portion relating to the .23-acre lot.


__________________________________________

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part; Reversed and Remanded in part on 

Motion for Rehearing 


Filed: August 30, 2007








APPENDIX A
1. A survey plat illustrating the locations of the lots is attached as Appendix A.
2. The parties dispute whether the deed clearly identifies "owners of the property" authorized 
to amend the restrictions. Ultimately, we need not reach that issue.
3. On rehearing, appellees have clarified that "[n]o common law damages were sought for
the .23 acre lot deed violation." 
4. It is unclear whether the district court's judgment is also predicated on this theory. The
court did not explicitly address this theory, although it made fact findings that appear possibly to
address some but not all of its elements. To avoid deemed findings, the Owenses requested
additional fact findings regarding each element, which the district court declined to make. However,
because both parties briefed the issue, and because we ultimately conclude that the implied reciprocal
easement theory cannot apply here, we proceed to address it.