**Reversed in Part, Affirmed in Part, and Rendered, and Opinion filed January 25, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00219-CV

---

## LUIS SOLORZANO II D/B/A TEXAS CLEARING AND LEVELING, Appellant

### V.

## SAGE COMMERCIAL GROUP LLC, Appellee

---

**On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 1148015**

---

## O P I N I O N

Appellant Luis Solorzano II d/b/a Texas Clearing and Leveling raises four issues in his appeal of the judgment rendered by the trial court in favor of appellee Sage Commercial Group, LLC on its declaratory-judgment claim against Solorzano.

In what appears to be a matter of first impression for this court, we must

determine whether the trial court erred in determining that Solorzano did not meet his burden under Business and Commerce Code chapter 56 to establish that the contingent-payment clause in the subcontract agreement between Sage and Solorzano was unconscionable and therefore unenforceable. Tex. Bus. & Com. Code Ann. §§ 56.001–.057. Although we conclude the contingent-payment clause was unconscionable (and therefore unenforceable) due to the lack of diligence on the part of Sage, we agree with the trial court that Solorzano released Sage from any contractual obligation to pay Solorzano by signing a separate release.

Solorzano also argues that Sage's declaratory-judgment counterclaim was inappropriate because it sought only a denial of Solorzano's claims along with an award of attorney's fees. We agree with Solorzano, reverse the judgment of the trial court granting the declaratory-judgment action, and render the judgment the trial court should have rendered: a take-nothing judgment on Solorzano's claims against Sage.

## I. BACKGROUND

Solorzano owns a company that performs construction and land clearing. In 2016, a representative of Western Spherical Developers, LLC called Solorzano on the telephone about clearing land in La Porte, Texas. Solorzano was told that someone would be in touch. Gary Bielat of Sage later contacted Solorzano relating to his quote.

Solorzano signed a contract with Sage (the "subcontractor agreement"), which provided that Solorzano would be paid $180,000.00 by Sage for clearing a specific tract of land. Although the subcontractor agreement does not disclose the owner of the real property, the subcontractor agreement provided:

> The Subcontractor shall file its payment application with the Contractor showing work completed during the current calendar

2

month and payment of such application, provided same shall be found to be correct by the Contractor, shall be due net 30 or when the General Contractor receives payment from the Owner for said work, whichever is later.

After Solorzano had completed half the work, he filed a payment application. Sage informed Solorzano that it was not receiving any payment or response from Western Spherical. Although Sage did make some attempts to contact Western Spherical, Bielat advised Solorzano to protect his rights and file a contractor's lien against the real property. It is undisputed that Sage was never paid by Western Spherical; and Sage, in turn, never paid Solorzano for the work performed or his materials. In 2017, Solorzano filed a contractor's lien release against the real property pursuant to Property Code chapter 53. *See* Tex. Prop. Code Ann. §§ 53.021, .052.

Western Spherical never actually owned the property. Western Spherical had been in contract to purchase the property, but the deal allegedly fell through over funding. The owner of the real property at all relevant times, 92 Fairmont Lakes, Inc., discovered Solorzano's lien in its attempt to sell the property to another purchaser and contacted Solorzano to release the lien.

Malladi Reddy, on behalf of 92 Fairmont Lakes, paid Solorzano $19,000 to release his lien. Reddy's nonlawyer property manager prepared a release agreement, which Solorzano signed. However, the release included language which recited payment of $90,000 and released Solorzano's claim for payment against several parties including Sage.

Solorzano's material's supplier filed suit against him in 2019 to recover the amounts unpaid attributable to the project. In 2020, Solorzano brought a third-party petition for damages against Sage, Western Spherical, and Gary Bielat, alleging Sage and Western Spherical failed to pay Solorzano for his performance under a

3

subcontract. The trial court signed an agreed judgment in favor of the materials supplier against Solorzano for $50,000. Counsel for Western Spherical appeared and admitted to liability; therefore, the trial court rendered judgment against Western Spherical for the entire amount in controversy under the subcontract.

In addition to asserting affirmative defenses, Sage counterclaimed for declaratory judgment that (1) the contingent-payment clause in the subcontractor agreement was valid and enforceable and/or (2) Solorzano's lien release was valid and enforceable. After a bench trial, the trial court rendered final judgment for Sage on its declaratory-judgment claim and awarded attorney's fees to Sage. Solorzano now appeals the trial court's judgment in favor of Sage.[1]

## II. ANALYSIS

### A. Enforceability of contingent-payment clause

#### 1. The trial court's findings

In his issues 1 and 2, Solorzano argues the trial court erred because: (1) the trial court found it was "not unconscionable for Sage Commercial to misrepresent to its subcontractor that it has a contract with the owner of the property, and shift the risk of collecting payment to Solorzano when Sage Commercial had no contract with anyone, much less a contract with the property owner"; and (2) the trial court found it was "not unconscionable for Sage to misrepresent to Solorzano that it had a contract with the owner of the property when Sage's only contract was a subsequent contract with a non-owner[.]"

However, the trial court did not make either of those findings. The trial court made the following findings and conclusions related to the contingent-payment clause:

---

[1] Solorzano dismissed his claims against Bielat on the record at the time of trial.

4

iii. Solorzano failed to meet [his] burden of proof to show that the contingent payment clause was unconscionable pursuant to Section 56.054 (a) of the Texas Business & Commerce Code based on the facts presented at the time of trial:

> a. Sage made multiple attempts to collect the amounts due and owing to Solorzano from Western;
>
> b. Sage encouraged Solorzano to file a lien claim to preserve his right to payment;
>
> c. Solorzano had knowledge of the owner, Western [Spherical], prior to engaging in work on the Project;
>
> d. Solorzano was able to successfully file a lien on the Project without seeking additional information from Sage;
>
> e. Solorzano never requested an assignment of Sage's right to payment from Western [Spherical];
>
> f. Solorzano received payment and released the lien for the total value purported to be due and owing;
>
> g. Solorzano is the only contractor to be paid anything for the work performed on this Project prior to Josh Materials, Inc.'s judgment against Solorzano; and,
>
> h. Solorzano failed to pay any portion of the amount he received from Dr. Reddy to his material supplier Josh Materials.

Taking all of these facts into account the contingent payment clause is valid and enforceable and is not considered unconscionable; therefore, Sage did not breach the Subcontract and does not owe any funds to Solorzano.

Because Solorzano specifically explains in his brief that he is challenging the legal and factual sufficiency of the trial court's findings, we construe issues 1 and 2 as a single issue challenging the legal and factual sufficiency of the evidence supporting the trial court's conclusion that the contingent-payment clause is valid, enforceable, and not unconscionable.[2]

---

[2] Solorzano specifically explained that he is raising on appeal legal- and factual-sufficiency challenges to the findings of the trial court:

## 2.    Statutory prohibition on contingent-payment clauses

Business and Commerce Code chapter 56 governs construction contracts with contingent-payment clauses. The provisions of the statute cannot be waived, and any purported waiver is void. Tex. Bus. & Com. Code Ann. § 56.004.

A contingent-payment clause may not be enforced by a contingent payor if enforcement would be unconscionable, and the party asserting that a contingent-payment clause is unconscionable has the burden of proving that the clause is unconscionable. Tex. Bus. & Com. Code Ann. § 56.054(a). The statute explains when a contract is not unconscionable:

> (b) The enforcement of a contingent payment clause is not unconscionable if the contingent payor:
>
>> (1) proves that the contingent payor has exercised diligence in ascertaining and communicating in writing to the contingent payee, before the contract in which the contingent payment clause has been asserted becomes enforceable against the contingent payee, the financial viability of the primary obligor and the existence of adequate financial arrangements to pay for the improvements; and
>>
>> (2) has done the following:
>>
>>> (A) made reasonable efforts to collect the amount owed to the contingent payor; or
>>>
>>> (B) made or offered to make, at a reasonable time, an assignment by the contingent payor to the contingent payee of a cause of action against the obligor for the amounts owed to the contingent payee by the contingent payor and offered reasonable cooperation to the

---

On his four issues, Appellant challenges the legal and factual sufficiency of the evidence to support the trial court findings of fact and seeks *de novo* review of the trial court's conclusions of law as follows: Findings of fact numbers 7, 9, 11, 13, 16, 17, 27 and Conclusions of Law numbers 5 (introduction paragraph), 5ii, 5iii, 5iii(a), 5iii(c), 5iii(d), 5iii(f), 5iii(g), 5 (concluding paragraph), 6, 8, 9, 10, 11, and 12.

contingent payee's collection efforts, if the assigned cause of action is not subject to defenses caused by the contingent payor 's action or failure to act.

Tex. Bus. & Com. Code Ann. § 56.054(b).

A contingent payor is considered to have exercised diligence in ascertaining and communicating in writing to the contingent payee if the contingent payee receives in writing from the contingent payor:

(1) the name, address, and business telephone number of the primary obligor;

(2) a description, legally sufficient for identification, of the property on which the improvements are being constructed;

(3) the name and address of the surety on any payment bond provided under Subchapter I, Chapter 53, Property Code, to which any notice of claim should be sent;

(4) if a loan has been obtained for the construction of improvements:

    A. a statement, furnished by the primary obligor and supported by reasonable and credible evidence from all applicable lenders, of the amount of the loan;

    B. a summary of the terms of the loan;

    C. a statement of whether there is foreseeable default of the primary obligor; and

    D. the name, address, and business telephone number of the borrowers and lenders; and

(5) a statement, furnished by the primary obligor and supported by reasonable and credible evidence from all applicable banks or other depository institutions, of the amount, source, and location of funds available to pay the balance of the contract amount if there is no loan or the loan is not sufficient to pay for all of the construction of the improvements.

Tex. Bus. & Com. Code Ann. § 56.054(d).

### 3. Solorzano met his burden on unconscionability

Although the trial court's findings of fact and conclusions of law state that

7

Solorzano did not meet his burden, the trial court's findings of fact do not support this conclusion.

"Generally, a contract is unconscionable if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex. 2001)). "The principle is one of the prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." Tex. Bus. & Com. Code Ann. § 2.302 cmt. 1 (internal citation omitted). The facts of this case involve a one-sided clause and a subcontractor who was not given complete information about the project on which he was working and the parties who were engaging his services.

Solorzano elicited testimony at trial establishing that Sage did none of the things required by statute to avoid the conclusion of unconscionability. *See* Tex. Bus. & Com. Code Ann. § 56.054(d). None of the trial court's findings of fact track the elements in chapter 56 to support its conclusion that Solorzano did not meet his burden. Other than the subcontractor agreement itself, the record reflects nothing was provided in writing to Solorzano about the project or the property owner. If Sage sought disclosure from Western Spherical regarding its funding or financial resources available to cover the cost of the work performed, the record does not reflect any such efforts.

Sage argues that Solorzano "knew" Western Spherical before Sage was involved; therefore, Sage was relieved of its responsibility to provide any information in writing as required by statute. Solorzano testified he had no pre-existing relationship with Western Spherical and he was called by Western

8

Spherical out of the blue. However, even if Sage believed that Solorzano had previously worked on a different project with Western Spherical or "knew" Western Spherical, the language of the statute does not support Sage's position that they did not need to provide project financial information or basic information about Western Spherical to rely on the contingent-payment clause. To the contrary, section 56.054 makes clear that a general contractor must exercise diligence with respect to each contract on which it seeks to enforce a contingent-payment clause. *See* Tex. Bus. & Com. Code Ann. § 56.054. Sage also offers no authority to support their position.

Sage argues on appeal that Sage and Solorzano "entered a clear, unequivocal and express agreement to shift the risk of Western's nonpayment . . . to Solorzano." However, Sage's arguments on this issue are unpersuasive because it does not discuss the effect of chapter 56 on the facts at issue, nor does Sage rely on caselaw written after the enactment of chapter 56.

We sustain issues 1 and 2.

## B.     Release of lien

In issue 3, Solorzano argues the trial court erred in concluding that "the Release is valid, enforceable and relieves Sage of any payment obligations under the subcontract agreement. Further the Release constitutes an accord and satisfaction of the Subcontract value."

We now consider whether the trial court's determination that the release was enforceable against Solorzano with respect to Sage was in error. The release signed by Solorzano provided the following:

> The total of $90,000.00 of all charges for and in connection with such labor performed and material furnished by the subcontractor, through this date has been paid in full to the

9

Subcontractor by 92 Fairmont Lakes, Inc., and Malladi S. Reddy, individually, to satisfy unpaid invoices owed by Sage Commercial Group, 92 Fairmont Lakes, Inc, and Malladi S. Reddy, individually to [Solorzano]. [Solorzano] acknowledges complete satisfaction of, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby forever waives and releases all liens and claims of lien of every kind against Owner, [Sage], or the Property[.]

. . . .

All of the provisions of this document shall bind [Solorzano] and [his] heirs, legal representatives, successors and assigns and shall inure to the benefit of . . . [Sage Commercial] and [Sage Commercial's] heirs, legal representatives, successors, and assigns.

Solorzano argues that the release does not match with the intention of the parties. He cites testimony at trial that Sage never paid the amounts identified in the release and explains that this is evidence there was no accord and satisfaction. Solorzano further argues that Sage was not a party to the release and cannot claim any status under the release. Solorzano further describes the inclusion of Sage and the amount identified in the release paid as "scrivener's errors."

A release is a writing which provides that a duty or obligation owed to one party to the release is discharged immediately or upon the occurrence of a condition. *National Union Fire Ins. Co. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. National Fire Ins. Co.*, 20 S.W.3d 692 (Tex. 2000); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). A release of a claim or cause of action extinguishes the claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex.1993). Like any other agreement, a release is a contract subject to the rules of contract construction. *Baty*, 63 S.W.3d at 848; *see also Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). When construing a contract, the court must give effect to the true

10

intentions of the parties as expressed in the written instrument. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019); *Baty*, 63 S.W.3d at 848.

"If we determine that the contract's language can be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous and we will construe it as a matter of law." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). If, however, the language of a release is subject to two or more reasonable interpretations, then the release is ambiguous, raising a genuine issue of material fact on the parties' intent. *National Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995).

To effectively release a claim in Texas, the release must "'mention' the claim to be released." *Victoria Bank & Tr. Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991). "[A]ny claims not clearly within the subject matter of the release are not discharged." *Id.* Here, the release clearly identifies the unpaid amount that Solorzano unambiguously agreed had been satisfied. The release also clearly identifies Sage as one of the parties against whom Solorzano releases his claim of lien. *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 339 (Tex. 2023) ("we have long said that a release will discharge only those persons 'named' or identified 'with such descriptive particularity' that their identity or connection to the released claims 'is not in doubt.'").

Although Solorzano devotes lengthy briefing to his argument that Sage was not a party to the release, the agreement was not a contract between two parties. The release was signed solely by Solorzano and released his claims for payment as against several entities. Although Solorzano signed and agreed to the release, he now seeks to avoid its legal effect and asks the court to rely on parol evidence. However, "the parol evidence rule bars the effort; and it matters not that the

11

defendants who invoke the rule are not parties to the instrument." *Cannon v. Pearson*, 383 S.W.2d 565, 570 (Tex. 1964) (concluding release of parents' alleged cause of action for wrongful death of child was valid and enforceable even though parents did not intend to release claim and defendants who invoked rule were not parties to release). Because the release is clear and unambiguous, we may not look to parol evidence to change or contradict the language of the contract.[3] *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996).

Solorzano also argues on appeal that the affirmative defense of mutual mistake operates to avoid enforcement of the release. However, Solorzano did not plead the affirmative defense, nor did he argue it at trial.

We conclude that the trial did not err in finding that the release "specifically releases [Sage] of any obligation to make payment" to Solorzano.[4] The language of the release itself introduced into evidence constitutes legally and factually sufficient evidence to support the judgment of the trial court.

We overrule issue 3.

---

[3] Solorzano also argues that inclusion of Sage as a released party in the release was a scrivener's error. *Black's Law Dictionary* defines "scrivener's error" as a synonym for "clerical error." *See Scrivener's Error*, *Black's Law Dictionary* (11th ed. 2019). A "clerical error" is one "resulting from a minor mistake or inadvertence . . . esp., a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading." *See Error*, *Black's Law Dictionary* (11th ed. 2019) (defining "clerical error"). The release specifically references the Subcontractor Agreement, identifies Sage by name on several occasions, and refers to Sage several additional times as the "contractor" which was defined in the release as Sage. The language and context of the release do not support Solorzano's argument that Sage was only referenced in the release due to a scrivener's error. The release reflects a clear intent to include Sage as a released party and release Sage from any further claims for payment arising out of the subcontract agreement.

[4] Because we conclude that Sage prevailed on its affirmative defense of release, we need not address its affirmative defense of accord and satisfaction.

## C.     Sage's declaratory-judgment counterclaim

In issue 4, Solorzano argues that the trial court erred in awarding attorney's fees and costs to Sage on its declaratory-judgment counterclaim because they were simply "mirror claims" attempting to reassert issues already before the trial court.

The Uniform Declaratory Judgments Act ("Act") authorizes a court to "award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. However, a declaratory-judgment action may not be used solely to obtain attorney's fees that are not otherwise authorized by statute. *See National Enter., Inc. v. E.N.E. Props.*, 167 S.W.3d 39, 44 (Tex. App.—Waco 2005, no pet.). "A counterclaim that presents no new controversy[ ] but exists solely to pave the way to an award of attorney's fees is improper." *Howell v. Mauzy*, 899 S.W.2d 690, 706 (Tex. App.—Austin 1994, writ denied); *see Save Our Springs All., Inc. v. Lazy Nine Mun. Util. Dist.*, 198 S.W.3d 300, 318 (Tex. App.—Texarkana 2006, pet. denied). In other words, a party generally may not invoke the Act to settle disputes that are already pending before the court. *BHP Petro. Co. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (orig. proceeding). This is sometimes referred to as the "mirror-image" rule. *See Washington Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 776 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *Save Our Springs*, 198 S.W.3d at 318.

While this rule precludes a counterclaim that presents nothing more than a denial of the plaintiff's claim, a court may allow a declaratory-judgment counterclaim if it states a claim for affirmative relief. *See Millard*, 800 S.W.2d at 841 (instructing that "Texas trial courts should decline to exercise jurisdiction seeking a declaration of non-liability in a tort action," but acknowledging that "[i]n certain instances . . . a defensive declaratory judgment may present issues beyond

those raised by the plaintiff"); *Hitchcock Props., Inc. v. Levering*, 776 S.W.2d 236, 239 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (same); *Howell*, 899 S.W.2d at 706 (same). "To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *General Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990) (quoting *Weaver v. Jock*, 717 S.W.2d 654, 657 (Tex. App.—Waco 1986, writ ref'd n.r.e.)).

Problematic for Sage is that the two declarations it sought relate to its defenses against Solorzano's breach-of-contract action. There is no continuing or ongoing relationship between Sage and Solorzano. The subcontract agreement was for a specific scope of work that was completed. The parties testified at trial there had been no communication for several years between Sage and Solorzano leading up to Solorzano filing suit against Sage. Although Sage argues on appeal its counterclaim presents greater ramifications than Solorzano's petition sought, Sage does not develop this argument stating only that "Solorzano executed an instrument intending [to] modify" the rights of the parties under the subcontract agreement. But the release which Sage references here is part of its defenses to contract enforcement and presents no greater ramifications than Solorzano's claims.

Because Sage's counterclaim was merely a denial of Solorzano's causes of action, the trial court erred in granting the declaratory-judgment action and no attorney's fees could have been awarded to Sage. *See Newman Oil Co v. Alkek*, 614 S.W.2d 653, 653 (Tex. Civ. App.—Corpus Christi 1981, writ ref'd n.r.e.) (even though defendants framed counterclaim as request for declaratory relief,

14

court of appeals held that allegations pleaded in defendants' counterclaims were not averments of fact upon which affirmative relief could be granted). Although an award of attorney's fees is generally reviewed for abuse of discretion, the trial court did not have discretion to award attorney's fees. *Southwest Guar. Tr. Co. v. Hardy Rd. 13.4 Joint Venture*, 981 S.W.2d 951, 956 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see generally Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) (standard of review for award of attorney's fees under Uniform Declaratory Judgments Act).

Accordingly, we sustain issue 4.

### III.   CONCLUSION

Having sustained issues 1, 2 and 4, and overruled issue 3, we reverse the judgment of the trial court granting Sage's declaratory-judgment action, affirm in part the judgment of the trial court, and render the judgment the trial court should have rendered: a take-nothing judgment by Solorzano on his claims against Sage.


/s/     Charles A. Spain
Justice

Panel consists of Justices Wise, Bourliot, and Spain.

15